# Brotherhood of Locomotive Firemen and Enginemen v. Sears.

(Decided October 16, 1928.)

## Appeal from McCracken Circuit Court.

1. Appeal and Error.—Though it appears an instrument was introduced in evidence, it not being in the record on appeal, appellate court must confine itself to consideration of those parts admitted in the pleadings or copied in the transcript.
2. Appeal and Error.—Neither trial nor appellate court will interfere with verdict unless it be "palpably" against the evidence; that is. glaringly or shockingly so.
3. Insurance.—Jury's findings, in action on fraternal beneficiary society's certificate of insurance, that insured was in good standing with the society when disabled and was not attempting burglary when injured, held amply supported by the evidence.

WHEELER & HUGHES for appellant.

L. B. ALEXANDER for appellee.

OPINION OF THE COURT BY COMMISSIONER STANLEY—
Affirming.

On October 7, 1920, the appellant, Brotherhood of
Locomotive Firemen and Enginemen, a fraternal benefi-
ciary society, issued its certificate of insurance to appel-
lee, James Sears, a member of Three Rivers Lodge, lo-
cated at Paducah. The certificate provided, in the event
the member became afflicted or sustained a physical
injury for which payment is provided in the constitution
of the brotherhood in force and effect at the time the lia-
bility arose, he should be entitled to participate in the
beneficiary fund of the brotherhood to the extent of $1,-
500, and in the event of his death while in good standing
that sum should be paid his mother as named beneficiary.
The constitution and by-laws of the order were by refer-
ence made a part of the certificate. It appears, at the
time involved, they provided if a member while in good
standing should sustain physical injuries resulting in
total disability or permanent incapacity, he became en-
titled to certain indemnity out of the benevolent fund,
which under the certificate issued appellee entitled him
to receive $50 a month as long as he continues to be so
disabled from performing all manual labor.

The appellant having declined to recognize appel-
lee's claim, he instituted this suit, alleging that he had
become totally and permanently disabled and incapaci-
tated from performing manual labor on July 9, 1926,
while in good standing upon the books of the grand lodge
of appellant society, and had duly and regularly paid his
premiums or assessments under the certificate, and that
there was due him at the time of filing the suit an aggre-
gate of $400. He further asserted that he was entitled
to receive $50 a month as long as his disability should
continue.

Admitting plaintiff's permanent and entire disabil-
ity, the defendant (1) denied his injuries had been sus-
tained while he was in good standing with the brother-
hood, or that he had duly or regularly paid his premiums
or assessments; and (2) further charged the insured's
condition was the result of a gunshot wound suffered
while engaged in an act which was in violation of the law,
that is, while engaged in breaking and entering a build-
ing in the nighttime or while undertaking to escape after
having entered it. Certain designated sections of its con-
stitution were set up, to the effect that the holder of the

certificate would not be eligible to receive benefits of the insurance under such conditions.

It is conceded the body of appellee is entirely paralyzed from the waist down, and that his condition is the result of a gunshot wound. The extent of recovery claimed in the petition is not controverted, but appellant denies he is entitled to anything. The two questions in issue were submitted to a jury, and it answered them adversely to appellant. Judgment was rendered in accordance with the verdict, awarding a recovery of $850, the amount due on the day of the trial (which had been set up by amended petition), with interest from the dates the monthly benefits became payable.

The only ground relied upon for a reversal of the judgment is that the verdict is contrary to the evidence and was given under the influence of passion or prejudice. This necessitates a statement of the evidence.

Although it appears a copy of the constitution was introduced in evidence, it is not in the record brought to this court. We must therefore confine ourselves to a consideration of only those parts admitted in the pleadings or copied in the transcript.

1. On the issue as to plaintiff's standing with the brotherhood at the time he suffered the injuries, the following evidence was heard by the jury: The plaintiff (now appellee) introduced J. E. Bailey, secretary and treasurer of the legislative board and former president of the subordinate lodge of the brotherhood. The witness identified a receipt signed by F. G. Pixler, financial secretary of the lodge, showing that appellee, Sears, had paid his dues for the life insurance feature and the other purposes of the brotherhood on August 1, 1926. The mother of appellee testified that her son had left his home in Paducah about the year 1922, and that she had regularly paid his insurance dues up until he was injured in 1926, and identified a number of receipts showing their payment. The father of appellee, Arch Sears, testified that he had paid these dues at different times, and on the 1st day of July had paid the dues payable July 1, 1926. He produced a receipt of the financial secretary of the brotherhood bearing that date and given to him on that date. He stated that when he paid the premium due August 1st, he notified a Mr. Ripley, who was collecting the dues in the absence of Pixler and who gave him Pixler's receipt, that his son, the appellee, had been injured.

He testified he also paid his September dues, but thereafter returned the receipt to Pixler, who stated that he wanted it in order to reinstate the boy, and when he did so, Pixler laid down $3.05, the amount of the premium, and walked away. Other evidence introduced in behalf of the plaintiff related to correspondence between the appellant's superior or general officers and the appellee and his attorney regarding the status of appellee at the time of his injury. Robertson, the president of the brotherhood, wrote that appellant was expelled September 2d, and Hawley, the grand secretary, later wrote he was expelled July 2d and reinstated July 26th. The secretary of the board of directors advised appellant the board had declined to reinstate him because of his physical condition after his expulsion on September 2d.

The defendant (now appellant) introduced F. G. Pixler, financial secretary of the local lodge, whose duty it was to collect the dues and assessments. He testified that a few times appellee's dues were not paid on the first of each month in 1926, particularly in March, which resulted in his expulsion and later reinstatement, in accordance with the laws of the organization, which were that on failure to pay dues on the 1st day of each month a member became automatically expelled on the 2d day of the month without notice; but if he paid his dues in time for the financial agent to make report to the grand lodge within 30 days he was readmitted, provided he was in good physical condition. He testified that appellee was so expelled in July; but as to the time of payment upon which such expulsion was based, he said:

"To the best of my knowledge his father left his dues with Mr. Ripley on the 4th or 5th of July."

He read into the record the sections of the constitution relating to the expulsion and reinstatement of members, as he had testified, and further that no officer or agent of a subordinate lodge or of the grand lodge should have power or authority to waive, vary, or modify any of the provisions of the constitution relating to the time of paying the assessments. However, one section of the constitution provided when a member was admitted into the lodge he was required to pay double assessments, which would continue his beneficiary certificate in effect 30 days in case of his expulsion for any cause.

Pixler had left signed receipts bearing the date of July 1st with Ripley as a matter of convenience. On the

4th or 5th of the month, which was before appellee received his injuries, the witness got from Mr. Ripley the money left with him by Mr. Sears, and made his report to the grand lodge, with the request that Sears be readmitted, which was done during the month. He did not learn of appellee's condition until some time in September. Pixler admitted that the dues payable August 1st had been accepted by the brotherhood. It is noted that this witness, the regular collector, relied upon what his representative, Ripley, told him, which testimony was received without objection. Upon cross-examination Pixler stated he returned to Paducah about noon July 1st, and saw Ripley about the matter before the 4th or 5th of July, on one of which days the premium came into his hands. He testified on one occasion he had collected dues as late as the 8th or 10th of the month from appellee's mother; and told her he would pay the boy's assessment himself and get the money from her later, but afterwards told her he could not do that any more, and they agreed during his absence he would leave the receipts with Ripley and she could pay him.

Mr. Ripley, to whom appellee's father paid his July dues, did not testify, and no reason appears for his failure to do so.

Appellee's proof was to the effect that his dues were paid promptly on July 1st, and, consequently, there was no cause for his expulsion or the suspension of his insurance; that it was in effect when he was injured on July 9th; and that the insurer's agent was advised of his condition on August 1st. Appellant's proof was to the effect that he lost his membership in the order and his insurance was suspended on July 2d and remained so until July 26th, although the premium was accepted July 4th or 5th. It is admitted appellant accepted his dues and assessments for August and September, but according to its evidence its officers were not then advised of appellee's condition. There is no evidence, however, that appellee concealed his condition or made any misrepresentations regarding it. His reinstatement (if expelled as appellant claimed) was not due to any action on his part, but, apparently, was done solely through and by the voluntary and customary action of appellant's agents when a brother had been a little late in his monthly payments to the local collector.

2. With respect to the manner in which the appellee sustained the injury resulting in paralysis, the evidence is brief. Appellee testified that while he was driv-

ing an automobile towards Olive Branch, in the northern part of Mississippi, on the night of July 9th, his car was "missing," and he stopped in front of a garage, went to it, and shook the door to arouse some one. Having heard no one, he turned and was walking away from the garage when some one shot him. The first shot struck him in the arm and back and knocked him down. As he fell he was again shot in the back. He neither saw nor heard any one at the time and had never since seen the one who shot him, but a man came to the hospital in Memphis to which he was taken and introduced himself as the owner of the garage. He denied he had broken into the garage.

The appellant's evidence on this point was in the form of an affidavit filed in support of its motion for a continuance, which was read as the depositions of the witnesses. By this method Ed Searcy testified that on July 9, 1926, appellee, Sears, and another person unknown to the witness, came into the garage of the Kerr Motor Company at Olive Branch, Miss., and left after staying around some time. On the night of July 10, 1926, the witness was asleep in a small room in the garage, and about midnight he was awakened by the noise of some one walking in the office and falling over an obstacle. The witness got up and saw some one going out the back door of the garage. Through the window he saw this person walking along the side towards the front. He called to him to stop, but instead of doing so he started to run, and the witness shot through the window. He called the owner of the garage and a doctor, and together they discovered the appellee. Sears at first refused to give his name, but when the doctor told him that it would be necessary before he could be taken to the hospital, appellee gave the name of James Miles, of Pittsburgh, Pa. He was then taken to the Methodist Hospital at Memphis, Tenn. A surgeon who operated on the appellee at the hospital, testified that the night of July 10, or early morning of the 11th, he advised the patient that he could not recover, and asked him concerning his people. Sears told him his name was not James Miles and gave his correct name and address and the name of his parents. The owner of the garage corroborated the testimony of Sears as to being called and finding appellee, and a nurse in the hospital corroborated the testimony of the doctor.

In rebuttal appellee contradicted the testimony of Searcy and denied ever having entered the garage. He also denied giving the name of James Miles or his ad-

dress as Pittsburgh, and stated he had a cap in his suitcase with such a name and address stamped therein, which was the cap of a boy with whom he had worked in Pittsburgh. He testified he was unconscious the greater part of the time and when he came to himself on Saturday morning he told who his people were.

As will be observed, there was a conflict in the evidence on both issues, which required their submission to the jury for determination. In the exercise of its prerogative the jury decided these issues against the contentions of appellant. It has often been declared that neither the trial nor appellate court will interfere with the verdict of a jury unless it is "palpably" against the evidence; that is, glaringly or shockingly so. As stated in Eagle Distillery v. Hardy (Ky.) 120 S. W. 336:

> "The rule that a verdict . . . will not be interfered with unless it is palpably and flagrantly against the evidence is as firmly fixed in the jurisprudence of this state as any principle of law resting on judicial deliverance can be, and has been announced in repeated decisions of this court, beginning with its earliest history."

We do not consider this verdict as being against the evidence in such degree, or at all. There was ample evidence to support it.

The judgment is therefore affirmed.